UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT WALPOLE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SEMGROUP CORPORATION, CARLIN G. CONNER, RONALD A. BALLSCHMIEDE, SARAH M. BARPOULIS, KARL F. KURZ, JAMES H. LYTAL, WILLIAM J. MCADAM, THOMAS R. MCDANIEL, NAUTILUS MERGER SUB LLC, and ENERGY TRANSFER LP,<br><br>Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMAND**<br><br>**CLASS ACTION** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Robert Walpole ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this class action on behalf of the public stockholders of SemGroup Corporation ("SemGroup" or the "Company") against SemGroup's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Energy Transfer LP through its wholly-owned subsidiary Nautilus Merger Sub LLC (collectively, "Energy Transfer").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with the United States Securities and Exchange Commission ("SEC") on October 3, 2019. The S-4 recommends that SemGroup stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby SemGroup is acquired by Energy Transfer. The Proposed Transaction was first disclosed on September 16, 2019, when SemGroup and Energy Transfer announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which SemGroup stockholders will receive $6.80 and 0.7275 common units of Energy Transfer for each share of SemGroup that they hold (the "Merger Consideration"). The deal is valued at approximately $5.1 billion and is expected to close in late 2019 or early 2020.

3.     The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by SemGroup management, and the financial analyses conducted by Jefferies LLC ("Jefferies"), SemGroup's financial advisor.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to SemGroup's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to SemGroup's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of SemGroup.

6. Defendant SemGroup is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at Two Warren Place, 6120 S. Yale Avenue, Suite 1500, Tulsa, Oklahoma 74136-4231. SemGroup common stock trades on NYSE under the ticker symbol "SEMG."

7. Defendant Carlin G. Conner ("Conner") has been President, Chief Executive Officer, and a director of the Company since 2014.

8. Defendant Ronald A. Ballschmiede ("Ballschmiede") has been a director of the Company since 2009.

9. Defendant Sarah M. Barpoulis ("Barpoulis") has been a director of the Company since 2009.

10. Defendant Karl F. Kurz ("Kurz") has been a director of the Company since 2009.

11. Defendant James H. Lytal ("Lytla") has been a director of the Company since 2011.

12. Defendant William J. McAdam ("McAdam") has been a director of the Company since 2017.

13. Defendant Thomas R. McDaniel ("McDaniel") has been a director of the Company since 2009 and Chairman of the Board since 2017.

14. Defendants Conner, Ballschmiede, Barpoulis, Kurz, Lytal, McAdam and McDaniel are collectively referred to herein as the "Board."

15. Defendant Energy Transfer LP is a Delaware limited partnership with its principal executive offices located at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225. Energy

Transfer LP common stock trades on NYSE under the ticker symbol "ET."

16. Defendant Nautilus Merger Sub LLC is a Delaware limited liability company and a wholly-owned subsidiary of Energy Transfer LP.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

18. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

19. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) SemGroup is incorporated in this District.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of SemGroup common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

21. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of September 13, 2019, SemGroup had approximately 78.9 million shares outstanding.

  (b) Questions of law and fact are common to the Class, including, inter alia, the following:

    (i) Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

    (ii) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

    (iii) Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file an amendment to the S-4 with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

    (iv) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

    (v) Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

  (c) Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

  (d) Plaintiff's claims are typical of those of the other members of the Class.

  (e) Plaintiff has no interests that are adverse to the Class.

(f) The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g) Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h) Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

22. SemGroup acts as a connection between upstream oil and gas producers and downstream refiners and end users. The Company uses pipelines, processing plants, storage facilities and a marine terminal to move oil and gas in the United States. In 2018, SemGroup reported revenues of $2.5 billion, a 20% increase from 2017 ($2.0 billion in revenues) and an 88% increase from 2016 ($1.3 billion in revenues).

23. Despite the Company's impressive growth, SemGroup entered into the Merger Agreement with Energy Transfer on September 15, 2019.

24. According to the press release issued on September 16, 2019 announcing the Proposed Transaction:

**SEMGROUP TO BE ACQUIRED BY ENERGY TRANSFER IN $5 BILLION TRANSACTION**

*SemGroup to merge with one of the largest, diversified midstream energy companies in North America*

*Benefits of scale will strengthen and accelerate growth opportunities for SemGroup assets and improve access to capital markets*

*SemGroup shareholders to benefit from significant, immediate premium and future upside of combined company*

Tulsa, Okla. – September 16, 2019 – SemGroup® Corporation (NYSE: SEMG) today announced it has entered into a definitive merger agreement whereby SemGroup will be acquired by Energy Transfer LP (NYSE: ET) ("ET" or "Energy Transfer") in a unit and cash transaction valued at approximately $5.1 billion, including the assumption of debt and other liabilities.

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, SemGroup shareholders will receive $6.80 per share in cash and 0.7275 of an ET common unit for each SemGroup share, or approximately 40% cash and 60% equity. The equity consideration received is expected to be treated as a tax-free transaction. The transaction values SemGroup at $17.00 per share, and represents a 65% premium to SemGroup's closing share price of $10.28 on September 13, 2019, and an 87% premium to SemGroup's 20 day volume weighted average price (VWAP) as of the same date. Upon closing, SemGroup shareholders are expected to own approximately 2.2% of ET's outstanding common units.

SemGroup Chief Executive Officer, Carlin Conner, said, "This strategically and financially compelling combination will result in SemGroup joining one of the largest midstream energy companies in the country, with a strong footprint in all major U.S. production basins. The combined entity's size, scale and financial profile will ensure that SemGroup's assets, including our Gulf Coast terminal, mid-continent footprint and our Canadian joint venture SemCAMS Midstream, benefit from significant growth well into the future. We look forward to leveraging the increased pipeline connectivity and expanded terminalling infrastructure that the combined entity provides.

Conner continued, "SemGroup has been exploring a range of strategic alternatives aimed at increasing shareholder value, and determined that this combination with ET is in the best interests of shareholders — providing immediate value, a significant premium, and opportunity to participate in the future upside of the combined business. Our transaction with ET underscores the strength of SemGroup's assets, and is a testament to our employees' dedication, hard work and focus on providing safe, efficient and reliable service while creating an asset portfolio that is highly desired."

The transaction is expected to close by late 2019 or early 2020, subject to obtaining regulatory approvals, SemGroup shareholder approval and other customary closing conditions.

### B. The Preclusive Deal Protection Devices

25. As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

26. By way of example, Section 5.4(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 5.4(c) demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

27. Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Energy Transfer. For example, pursuant to Section 5.4(b) of the Merger Agreement, the Company must notify Energy Transfer of any offer, indication of interest, or request for information made by an unsolicited bidder. That includes the identity of any party making a proposal and the material terms of that proposal. Thereafter, should the Board determine that the unsolicited offer is superior, Section 5.4(e) requires that the Board grant Energy Transfer seventy-two hours to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. In other words, the Merger Agreement gives Energy Transfer access to any rival bidder's information and allows Energy Transfer a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for SemGroup, because the Merger Agreement unfairly assures that any "auction" will favor Energy Transfer and allow Energy Transfer to piggy-back upon the due diligence of the foreclosed second bidder.

28. In addition, pursuant to Sections 7.3(a) and (c) of the Merger Agreement, SemGroup must pay Energy Transfer a termination fee of $54.5 million if the Company decides

to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer.

29. Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Energy Transfer's inadequate offer price.

**C. The Materially Incomplete and Misleading S-4**

30. The Individual Defendants must disclose all material information regarding the Proposed Transaction to SemGroup stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

31. On October 3, 2019, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, SemGroup stockholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

> *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

32. The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of

9

Jefferies' fairness opinion, Jefferies reviewed "certain information furnished to Jefferies by the management of SemGroup and Energy Transfer, including financial forecasts and estimates and analyses provided by the management of SemGroup and Energy Transfer, relating to the business, operations and prospects of each of SemGroup and Energy Transfer, respectively." Accordingly, the S-4 should have, but failed to, provide certain information in the projections that SemGroup's management provided to the Board and Jefferies.

33.     Notably, Defendants failed to disclose the full dataset of projection line items for both SemGroup and Energy Transfer for all future periods applicable, including: (a) revenue by category; (b) operating costs and expenses by category; (c) net income (loss); (d) interest expense; (e) depreciation and amortization; (f) cash taxes; (g) maintenance capital expenditures; (h) preferred distributions; (i) non-controlling interests; (j) individual selected items that SemGroup believes impact the comparability of financial results between reporting periods; (k) EBITDA; (l) distributions; and (m) stock-based compensation expense. This omitted information is necessary for SemGroup stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning Jefferies' Financial Analyses*

34.     With respect to the *Selected Public Companies Analysis,* the S-4 fails to disclose the full dataset of individually observed metrics and multiples for each of the selected public companies analyzed by Jefferies, including current distribution yield, 2020E distribution yield, EV/2019E EBITDA and EV/2020E EBITDA. The S-4 also fails to disclose whether Jefferies performed any type of benchmarking analysis for SemGroup and Energy Transfer in relation to the selected public companies.

35. With respect to the *Discounted Cash Flow Analysis,* the S-4 fails to disclose the definition of distributable cash flow, as used by Jefferies for Energy Transfer in the analysis. The S-4 further fails to disclose the individual numerical inputs and assumptions used by Jefferies to determine the discount rate range of 9.77% to 10.77% for SemGroup and 9.15% to 10.15% for Energy Transfer. In addition, the S-4 fails to disclose the specific numeric metrics to which the selected terminal yields were applied for both SemGroup and Energy Transfer, as well as the resulting implied terminal EBITDA multiples for both SemGroup and Energy Transfer. Finally, the S-4 fails to disclose whether stock-based compensation was treated as a cash or non-cash expense for the purposes of the analysis.

36. With respect to the *Selected Transactions Analysis*, the S-4 fails to disclose the full dataset of individually observed metrics and multiples for each of the selected transactions analyzed by Jefferies, including 1 Trading Day Premium, 7 Trading Days Premium and 30 Trading Days Premium. The S-4 also fails to disclose whether Jefferies performed any type of benchmarking analysis for SemGroup in relation to the selected transactions.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

37. The S-4 also fails to disclose material information concerning the sales process. For example, the S-4 noted that SemGroup had engaged in preliminary discussions with Company B concerning a business combination. While the S-4 states that those discussions were terminated "soon after," there is no information about when discussions began, which entity initiated discussions or whether any proposals or offers were made.

38. On August 22, 2019, Company C indicated its interest in taking SemGroup private after discussions with a SemGroup stockholder. The S-4 does not disclose the identity of the

stockholder, how much the stockholder owns, or whether the stockholder had been in communication with the Company or the Board about strategic alternatives.

39. After receiving proposals from Company C and Energy Transfer, the Board decided to conduct a market check process. The S-4 indicates that Jefferies contacted strategic and financial parties to determine their interest in a strategic transaction with SemGroup. The S-4 does not disclose how many parties were contacted in total, how many entered into confidentiality agreements with SemGroup, or whether there were discussions with certain parties that did not end in an offer or proposal.

40. Jefferies provided a number of financial analyses to the Board, yet the S-4 does not disclose those analyses. That includes: the financial analysis of Energy Transfer's July 12, 2019 proposal as presented to the Board on August 14, 2019; the financial analyses of the proposals received from Company C, Company G, Company D, Company E, Company F and the revised proposal from Energy Transfer, as presented to the Board on September 8, 2019; and the sensitivity analysis of valuation assumptions concerning Energy Transfer's proposal , the overview of the valuation analyses of Energy Transfer and Sem Group, public market trading multiples, discounted cash flow analyses and the comparison of broker research target price estimates for Energy Transfer and SemGroup as presented to the Board on September 13, 2019.

41. On September 13, 2019, the Board discussed conflicts of interests of Jefferies and members of the deal team. The Board determined those conflicts to be immaterial. Yet in its fairness opinion, Jefferies made no mention of any potential conflicts of interest. SemGroup stockholders are entitled to know if there were conflicts of interest that impacted Jefferies' work or financial analyses.

42. The S-4 notes that Jefferies had been retained by the Board in January 2019 to act as a financial advisor in connection with evaluating various strategic alternatives. The S-4 does not disclose, however, whether the Board revised the terms of Jefferies' engagement once it decided to sell the Company.

43. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. Without all material information, SemGroup stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

44. In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

45. Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

46. Further, the S-4 indicates that on September 15, 2019, Jefferies reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to SemGroup stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information

concerning Jefferies' financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

47. Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. Defendants have filed the S-4 with the SEC with the intention of soliciting SemGroup stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

50. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of SemGroup, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

51. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with

respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

52. Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of SemGroup shares and the financial analyses performed by Jefferies in support of its fairness opinion; and (iii) the sales process.

53. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that Jefferies reviewed and discussed its financial analyses with the Board during various meetings including on September 15, 2019, and further states that the Board relied upon Jefferies' financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

54. The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of SemGroup within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SemGroup and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

59. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to SemGroup stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

C. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

D. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 15, 2019

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*